IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GARY W. GREER, SR. and<br>DONNA GREER,<br><br>    Plaintiffs,<br><br>    v.<br><br>BOB BELL CHEVROLET OF BEL AIR,<br>INC. and<br>GENERAL MOTORS CORPORATION,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No.: RDB 05-372 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This action arises out of a Complaint filed by Gary W. Greer, Sr. and Donna Greer ("Plaintiffs") against Bob Bell Chevrolet of Bel Air, Inc. and General Motors Corporation ("Defendants"). Currently pending before this Court is Defendants' Motion for Summary Judgment with respect to all claims asserted by Plaintiff Gary W. Greer, Sr. Defendants contend that Mr. Greer's claims are precluded as a result of an arbitration award that he received before commencing this action. This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. The parties' submissions have been reviewed and no hearing is necessary. See Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED. As a result, judgment is entered in favor of Defendants with respect to the claims asserted by Plaintiff Gary W. Greer, Sr. The parties are instructed to file a joint status report by March 22, 2007 addressing the status of the surviving claims of Plaintiff Donna Greer.

## BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are undisputed. In the early evening of February 8, 2003, Plaintiff Gary W. Greer, Sr. ("Gary Greer") was driving his Chevrolet Suburban on Pennsylvania State Rte. 372 in York County, Pennsylvania. Also in the car was his wife, Plaintiff Donna Greer, and their three minor children. The Suburban was purchased on September 27, 2002 and had less than 5,000 miles on the odometer. At about 6:00 p.m., a Subaru Impreza collided with a Mazda 626 at an intersection on Rte. 372. The collision forced the Mazda 626 to veer in front of, and collide with, the Greers' Suburban. The Subaru Impreza subsequently struck the Suburban's rear-end.

As a result of this accident, the front seat passenger of the Mazda 626—a mother and schoolteacher named Lisa Beam—was instantly killed. Her two teenage children, who were riding in the back of the Mazda 626, sustained major orthopedic injuries. Plaintiff Gary Greer suffered significant back injuries. Plaintiff Donna Greer suffered a knee injury and abrasion to her forehead. The Greers' Suburban was declared a total loss. Plaintiffs contend that their injuries resulted from the failure of the air bags in the Suburban to deploy during the accident.

The insurance available in connection with the Mazda 626 and Subaru Impreza was limited to $300,000. The majority of this amount was used to satisfy the death and injury claims of Lisa Beam and her children. A small portion, however, was paid to the Greer family to settle their claims against the driver of the Subaru Impreza: Gary Greer received $4,400, Donna Greer received $7,700, and the Greer children received $4,800.

After resolving their claims against the driver of the Subaru Impreza, the Greer family filed an underinsured motorist policy claim with Penn National Insurance Company ("Penn

National"). This claim was based on provisions of the motor vehicle insurance policy purchased by Gary Greer and issued by Penn National. That policy allowed up to $300,000 in underinsured motorist policy benefits and provides as follows:

> If we and the "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured" then the matter may be settled by arbitration. The decision of the arbitrators will be binding on these two issues.

(Def.'s Mem. Supp. Summ. J. Ex. A.) Gary Greer and Penn National were unable to agree on an amount of damages and, as a result, Gary Greer's claim was submitted to arbitration.[1] After a hearing, the arbitrators made the following determination:

> And now, January 10, 2005, after consideration of the evidence adduced at the hearing held on December 15, 2004, and the documents submitted by the respective parties, we, the arbitrators named below, hereby award in favor of the Plaintiff Gary Greer, Sr., and against Defendant Pennsylvania National Insurance Company in the sum of Two Hundred Thousand ($200,000.00) Dollars.

(*Id*. at Ex. B.) At the time of the arbitration hearing, a doctor reported that Mr. Greer's back injuries left him with a "disability that precluded him from doing anything other than *sedentary or light work*." (Pl.'s Opp. Summ. J. p. 3 (emphasis in original).) Since that time however, "Mr. Greer's physical condition has so deteriorated that two physicians currently believe that he qualified for full Social Security Disability benefits." (*Id*. at p. 4.)

On February 7, 2005, Plaintiffs filed a Complaint against Defendants in this Court. On February 10, 2005, Plaintiffs filed an Amended Complaint. On April 21, 2006, Defendants filed

---

[1] Penn National resolved the claim with respect to the other members of the Greer family by paying Donna Greer and the Greer children $8,500.

their Motion for Summary Judgment.  (Paper No. 21.)  On April 27, 2006, Plaintiffs' children—who were also named as plaintiffs in the initial pleadings—were voluntarily dismissed.  (*See* Paper Nos. 22-23.)

## **STANDARD OF REVIEW**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an

issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2740, 399 (3d ed. 1998)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I.     The Complaint.

Plaintiffs' Amended Complaint asserts four causes of action. In Count I, Plaintiff Gary Greer asserts a claim against Defendant Bob Bell Chevrolet of Bel Air, Inc. for selling a vehicle "in a defective and unreasonably dangerous condition in that the air bags within the vehicle contained a latent manufacturing flaw which resulted in the failure of the airbags to operate. . . ." (Am. Comp. ¶ 10.) In Count II, Gary Greer asserts substantially the same claim against Defendant General Motors Corporation. (*Id.* at ¶¶ 15-19.) In Count III, Plaintiffs assert a claim for loss of consortium against Defendant Bob Bell Chevrolet of Bel Air, Inc. (*Id.* at ¶¶ 20-22.) In Count IV, Plaintiffs assert the same claim against Defendant General Motors Corporation. (*Id.* at ¶¶ 23-25.) Plaintiffs seek damages in excess of $2,200,000 in connection with the above claims. (*Id.* at ¶¶ 14, 19, 22, & 25.)

### II.    Motion for Summary Judgment.

In *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941) the Supreme Court

determined that, in a diversity action in federal district court, the court is to apply the conflicts law of the forum state. *Id*. at 496 (relying upon *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Maryland courts apply the doctrine of *lex loci delicti* in tort actions. *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). That doctrine requires that "'when an accident occurs in another state, substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place.'" *Id*. at 230 (quoting *White v. King*, 223 A.2d 763, 765 (Md. 1966)). Here, the parties agree that the alleged tort occurred in the State of Pennsylvania. Accordingly, the substantive law of Pennsylvania applies in this case.

Defendants argue that Gary Greer's claims were extinguished by his arbitration award and the resulting underinsured motorist payments he received from Penn National. Defendants emphasize that Mr. Greer was allowed to present his claim for damages to a panel of arbitrators, and contend that the determination made by those arbitrators constitutes a final judgment with respect to damages. Defendants rely on a number of Pennsylvania decisions holding that, under similar factual circumstances, the claims of plaintiffs were barred by the doctrine of collateral estoppel. Defendants also maintain that Mr. Greer's claims are barred by the "single recovery" rule, which provides that an injured party is limited to one satisfaction for a single injury. Finally, Defendants contend that any cause of action that Mr. Greer may have had against them passed to Penn National as a result of the arbitration award. *See*, *e.g.*, *Sterling v. Fineman*, 630 A.2d 1224, 1230 (Pa. Super. 1993) ("[W]here a plaintiff has previously litigated a claim under the uninsured motorist provisions of an insurance policy, he is collaterally estopped from pursuing the same claim of injury again against a new defendant even though he may have

incurred additional damages"), *appeal denied*, 649 A.2d 675 (Pa. 1994); *Johnson v. Beane*, 664 A.2d 96, 98 (Pa. 1995) ("[W]e hold that when an injured party is fully compensated for a particular loss by her underinsurance carrier, her right to sue the tortfeasor is extinguished.  By operation of law, the underinsurance carrier acquires the right to sue the tortfeasor to recover the amount it paid its insured.").

In response, Plaintiffs make three arguments: (1) Plaintiff Gary Greer was not fully compensated for his injuries because he "never received a hearing on his complete disability and was never given the opportunity to present evidence on his injuries," (Pl.'s Opp. Summ. J. p. 6); (2) Plaintiffs' claims are not precluded because Penn National "did not acquire the rights to sue General Motors on the airbags that failed to deploy," (*id*. at p. 5); and (3) the arbitration award has no bearing with respect to Plaintiffs' suit against Defendant General Motors Corporation because "the recovery of a judgment by the injured person against one joint-tortfeasor did not discharge the other joint-tortfeasors," (*id*. at p. 6).  Each of the above arguments is addressed in further detail below.

Pennsylvania courts have noted that collateral estoppel—also referred to as issue preclusion—is broader than *res judicata* and "operates to prevent a question of law or issue of fact which has once been litigated and finally determined in a court of competent jurisdiction from being relitigated in a subsequent suit."  *Alberici v. Tinari*, 542 A.2d 127, 131 (Pa. Super. 1988) (citations omitted), *appeal denied*, 627 A.2d 730 (1993).

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the

> prior proceeding and (5) the determination in the prior proceeding
> was essential to the judgment.

*Incollingo v. Maurer*, 575 A.2d 939, 940 (Pa. Super. 1990) (quoting *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 559 A.2d 896, 901 (Pa. 1989)), *appeal denied*, 584 A.2d 318 (Pa. 1990).  Pennsylvania courts routinely apply this doctrine in the context of arbitration proceedings.  *See*, *e.g.*, *Phillip v. Clark*, 560 A.2d 777, 780 (Pa. Super. 1989) ("[C]ollateral estoppel is appropriate here . . . [a]ppellants are, in essence, attempting to once again litigate the exact same matter as litigated in the arbitration proceedings."), *appeal denied*, 593 A.2d 421 (Pa. 1990).

In evaluating collateral estoppel arguments in factual contexts like the one at bar, Pennsylvania courts focus on specific policy concerns:

> In analyzing appellee's collateral estoppel argument it must be
> remembered that although appellants had recovered from their own
> carrier, due to the uninsured motorist context, appellants could be
> said to have been in a constructive adversarial relationship with
> that carrier.  The essence of uninsured motorist coverage is that the
> insured's carrier will provide the liability coverage of the negligent
> tortfeasor where the tortfeasor does not do so himself.  Thus, the
> insured's carrier, in a constructive sense, takes the place of the
> alleged tortfeasor's carrier and the insured, to recover, must
> establish the liability of the tortfeasor in the same manner as if
> proceeding directly against the alleged tortfeasor himself.  One
> would presume, as well, that the interests of the insured and
> insurer also take on an adversarial relationship as well.  The
> insured would naturally try to recover as much as possible while
> the insurer, in order to minimize its own liability, would advocate
> against an excessive assessment of damages.  Thus, there is
> compelling reason to consider the arbitration award a fair and final
> litigation of appellant's damages, and the similarity in position of
> the alleged tortfeasor and the uninsured motorist carrier would
> seem to also militate toward allowing collateral estoppel effect to
> the arbitrator's award.  This analysis would pertain to an ordinary
> uninsured motorist case. . . .

*Phillip*, 560 A.2d at 780 (citation omitted); *see also Shankweiler v. Regan*, No. 99-6101, 2002 WL 32096601, at *27 (Pa. D. & C.4th Sept. 5, 2002) (unpublished) (citing *Phillip* in the context of a claim for underinsurance motorist benefits).

In this case, there is no dispute that the issue of damages suffered by Plaintiff Gary Greer in connection with his accident was submitted to the arbitration panel. Plaintiffs do not dispute, moreover, that Mr. Greer had a full and fair opportunity to litigate the matter of damages at his arbitration hearing. Finally, there is no reasonable dispute that the arbitrators' determination with respect to damages constitutes a final judgment on that issue. As a result, this case falls squarely within the holding of *Incollingo v. Maurer*, 575 A.2d 939 (Pa. Super. 1990), *appeal denied*, 584 A.2d 318 (Pa. 1990). In that decision, the Superior Court of Pennsylvania faced the following question:

> The issue which we must resolve is whether a plaintiff, after having the question of damages determined by a panel of arbitrators under the uninsured motorist provision of his policy, may then proceed in a separate civil action for the same damages arising from the incident.

*Id*. at 940. The court found that the plaintiff was collaterally estopped from re-litigating issue of damages in civil action against driver of third vehicle involved in collision and, in so doing, specifically rejected the argument that a plaintiff is "entitled to a second bite of the apple by means of suing the [defendants] for the same damages he has already recovered from his own insurance company." *Id*. at 942. Like the plaintiff in *Incollingo*, each of the elements of collateral estoppel are satisfied with respect to the claim for damages that Plaintiff submitted to the arbitration panel and the damages claim that Plaintiff is pressing here. Accordingly, this Court finds that Mr. Greer is collaterally estopped from re-litigating the matter of damages in

this action against Bob Bell Chevrolet of Bel Air, Inc. and General Motors Corporation.

For similar reasons, this Court finds that Mr. Greer's claims fall within the "well-established" rule that "a plaintiff is limited to one satisfaction for a single injury." *Franklin Decorators, Inc. v. Kalson*, 479 A.2d 3 (Pa. Super. 1984). In *Rossi v. State Farm Auto. Ins. Co.*, 465 A.2d 8 (Pa. Super. 1983), the plaintiff settled her claims against the insured driver of the car in which she was a passenger when she was injured, and then proceeded to assert a claim against the driver's uninsured motorist coverage under the same policy. The court applied the "single recovery" rule to find that the plaintiff "is not legally entitled to recover duplicate damages for the same injuries under the separate coverages afforded" by the policy. *Id*. at 11. Although *Rossi* involved whether a plaintiff could recover under different provisions of the same insurance policy, at least one Pennsylvania court has applied the single recovery rule to find that a plaintiff who has been awarded full compensation cannot recover duplicate damages from a different party. *See Hade v. Bell Helmets, Inc.*, 21 Phila. Co. Rptr. 80, 83 (Pa. Com. Pl. 1990) ("Since Hade has been fully compensated for his injuries, he is not entitled to any additional compensation from Bell Helmets, Inc. or Robert Edwards.") (citation omitted), *aff'd*, 589 A.2d 1180 (Pa. Super. 1991), *appeal denied*, 596 A.2d 800-801 (Pa. 1991); *see also Hess v. Commonwealth Turnpike Com'n*, 868 A.2d 1283, 1285 (Pa. Cmwlth. 2005) (suggesting that "determination of liability or the amount of damages" would trigger the single recovery to bar recovery of duplicate damages against a different party).

Finally, this Court finds that Mr. Greer's right to sue Bob Bell Chevrolet of Bel Air, Inc. and General Motors Corporation passed to Penn National as a consequence of his arbitration award. In *Johnson v. Beane*, 664 A.2d 96 (Pa. 1995), the Supreme Court of Pennsylvania

analyzed the effect of payment made by an underinsurance motorist carrier on the injured party's claim against the tortfeasor. The plaintiff in that case, Leslie Ann Johnson, was injured in an automobile accident with George Beane. Although Mr. Beane admitted liability, his insurance company refused to settle for the policy limit of $25,000. Ms. Johnson took the matter of damages to trial and obtained a jury verdict in the amount of $200,000. She then requested $175,000 from her underinsurance motorist carrier but no agreement was reached. In the meantime, the trial court ordered a remittitur reducing the verdict to $75,000. Mr. Beane's insurance company paid the $25,000 policy limit and Ms. Johnson agreed to settle with her underinsurance carrier for the remaining $50,000 of the judgment. Ms. Johnson then commenced a bad faith garnishment action against Mr. Beane's insurer, seeking $50,000 based on the existing judgment against Mr. Beane. The court dismissed this action on grounds that Ms. Johnson had effectively assigned her right to recovery to her underinsurance carrier in exchange for the entire sum due her:

> We must next determine whether [Johnson] can commence any further action against the tortfeasor. The Superior Court held that there was no debt owing from Beane to [Johnson] since [Johnson] had been fully compensated by [her underinsurance carrier]. We agree. Specifically, we agree with Judge Johnson's concurring opinion which held that regardless of the language contained in the Release and Agreement, [Johnson's] claim passed to [her underinsurance carrier] by virtue of the fact that [her underinsurance carrier] paid the remainder of the judgment. The goal of subrogation is to place the burden of the debt upon the person who should bear it. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he is subrogated. As subrogee, [Johnson's underinsurance carrier] now stands in the shoes of [Johnson] and may pursue an action to recover the amount it paid to [Johnson]. It is of no moment to [Johnson] if [her underinsurance carrier] decides not to pursue its right of recovery.

*Id.* at 100.  In this case, the principles set forth in *Johnson* apply with equal force.  Once Penn National paid to Mr. Greer an amount equal to the damages determined by the arbitration panel, Mr. Greer's claims against Bob Bell Chevrolet of Bel Air, Inc. and General Motors Corporation passed to Penn National "[b]y operation of law." *Id.* at 98.

Finally, the specific arguments raised by Plaintiffs have been resolved in Defendants' favor by Pennsylvania courts.   For example, Plaintiffs contend that Gary Greer "never received a hearing on his *complete disability* and was never given the opportunity to present evidence on his injuries."  (Pl.'s Opp. Summ. J. p. 6 (emphasis added).)  The only basis for this contention is that

> [a]t the time of the [underinsured motorist] award, Plaintiff's wage loss was calculated on Plaintiff working in a diminished capacity, albeit still working a significant amount of hours in a less labor intensive position.  Since the time of the [underinsured motorist] award, Plaintiff's doctors have documented that Plaintiff Gary Greer Sr. has more severe limitations in working as an auto mechanic, truck driver or equipment operator.

(*Id.* at p. 4.)  In other words, Plaintiffs argue that Gary Greer did not receive a full hearing on the matter of damages because the extent or scope of those damages was unknown at the time of the arbitration proceedings.  This argument, however, has been rejected on numerous occasions by Pennsylvania courts:

> [P]laintiffs argue that the *damages* sought previously differ from those demanded instantly in that they have been incurred since the arbitration.  However, the injuries (claims) upon which these new and different damages are based remain the same as were heard in the prior arbitration.  Indeed, counsel's own statements reflect that the additional damages sought are those incurred in the continued treatment of the same injuries. We believe that based upon the authority of *Incollingo v. Maurer*, 575 A.2d 939 (Pa. Super. 1990), we must reject plaintiffs' arguments herein and hold that summary judgment was properly granted.  The present state of the

> law would hold that where a plaintiff has previously litigated a
> claim under the uninsured motorist provisions of an insurance
> policy, he is collaterally estopped from pursuing the same claim of
> injury again against a new defendant even though he may have
> incurred additional damages.

*Sterling*, 630 A.2d at 1228-29 (emphasis in original); *Carter v. Jenkins*, 25 Phila. Co. Rptr. 273, 276 (Pa. Com. Pl. 1993) (finding that "evidence of additional damages arising from the same injuries does not constitute a 'new claim'" for collateral estoppel purposes), *aff'd*, 633 A.2d 1219 (Pa. Super. 1993), *appeal denied*, 646 A.2d 1174 (Pa. 1994); *Hade v. Bell*, 21 Phila. Co. Rptr. at 83 ("It is clear under Pennsylvania law that an arbitration award of Uninsured Motorist benefits will collaterally estop a plaintiff from re-litigating those damages.") (citation omitted).

Plaintiffs' other arguments fail for similar reasons. For example, the court in *Hade v. Bell* rejected the plaintiff's attempt to avoid the single recovery rule by relying on a different theory of liability:

> Plaintiffs had a full and fair opportunity to litigate their damages
> for all injuries. Even though Plaintiffs claim a different theory of
> recovery in this case (product liability rather than negligence), the
> factual issues are basically the same. Plaintiffs now claim that the
> helmet itself, that is the design, was worse than it would otherwise
> have been. It is a fundamental rule of damages that a person
> injured by the tortious act of another is entitled to compensation,
> but a Court will not allow that injured person more than one
> satisfaction in damages under different theories of liability. Since
> Hade has been fully compensated for his injuries, he is not entitled
> to any additional compensation from Bell Helmets, Inc. or Robert
> Edwards.

*Hade v. Bell*, 21 Phila. Co. Rptr. at 82-83 (citation omitted).

In sum, the determination with respect to damages issued by the arbitration panel requires that Plaintiff Gary W. Greer, Sr. is collaterally estopped from relitigating the issue of damages in this action. For the same reasons, the "single recovery" rule operates to bar revisiting the issue

of damages in a trial before this Court. Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED. The parties are instructed to file a joint status report by March 22, 2007 addressing the status of the surviving claims of Plaintiff Donna Greer. A separate Order follows.

Dated: March 8, 2007                          /s/
                                              Richard D. Bennett
                                              United States District Judge